# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**CIRDAN E.[1],**

        Plaintiff,

    v.

**NANCY A. BERRYHILL,** Deputy
Commissioner for Operations, performing the
duties and functions not reserved to the
Commissioner of Social Security,

        Defendant.

Case No. 6:17-cv-1530-SI

**OPINION AND ORDER**

Kathryn Tassinari and Robert Baron, HARDER, WELLS, BARON & MANNING, P.C., 474
Willamette St., Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204;
Sarah L. Martin, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social
Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of
Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Plaintiff Cirdan E. ("Plaintiff"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision denying Plaintiff's application for DIB is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on February 3, 1980. AR 30. Plaintiff completed two years of college. AR 208. Plaintiff worked as a telemarketer, job skills trainer, and sales person. AR 208. He filed for DIB on July 16, 2013, alleging disability beginning April 2, 2013, due to severe attention deficit disorder ("ADD"); attention deficit hyperactivity disorder ("ADHD"); "back/leg injury;" and chronic migraines. AR 207. Plaintiff was 33 years old as of the alleged disability onset date.

Plaintiff's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). AR 19. An administrative hearing was held before ALJ Katherine Weatherly on March 8, 2016. AR 39-88. Plaintiff was represented by counsel and testified. *Id.* On April 18, 2016, ALJ Weatherly issued a written decision denying Plaintiff's application. AR 19-31. The Appeals Council denied Plaintiff's subsequent request for review, making the ALJ's decision final. AR 1-3. Plaintiff requests review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is

not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity from January 1, 2015 until June 30, 2015, after the alleged disability onset date of April 2, 2013. AR 21. The ALJ determined, however, that there were continuous 12-month periods in which Plaintiff did not engage in substantial gainful activity and, therefore, proceeded to the next step of the sequential process. AR. 22. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: migraines; hypertension; bilateral carpal tunnel syndrome; degenerative disc disease of the lumbar spine status post 2015 microlaminectomy and discectomy; moderate alcohol related disorder, current status unclear; ADHD; unspecified depressive disorder; somatic symptom disorder; post-traumatic stress disorder ("PTSD"); and an

unspecified personality disorder. AR 22. The ALJ also found that Plaintiff's degenerative disc disease of the cervical spine; "status post right thumb fracture;" history of right hip sprain and groin strain; and hemorrhoids were non-severe impairments. AR 22.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22-23. The ALJ next addressed Plaintiff's RFC. The ALJ found that Plaintiff had the capacity to perform sedentary work, except that he can:

> lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying. He is limited to occasional climbing of ramps and stairs, but is unable to climb ladders. He may occasionally balance, stoop, kneel, crouch and crawl and may frequently but not constantly, handle, finger and feel with his upper left extremity due to carpal tunnel syndrome. The claimant must avoid concentrated exposure to vibration and avoid all exposure to hazards such as work at unprotected heights or with dangerous machinery. The claimant is capable of performing simple, routine repetitive tasks with no public contact and only occasional coworker contact.

AR 24.

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as a customer service representative, resident care aide, or sales person. AR 29. At step five, the ALJ found that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including computer-controlled color photograph printer operator, escort vehicle driver, and electronic assembler. AR 30-31. The ALJ therefore concluded that Plaintiff is not disabled. AR 31.

**DISCUSSION**

Plaintiff argues that the ALJ erred by (A) miscalculating Plaintiff's date last insured; (B) rejecting his subjective symptom testimony; (C) incorrectly evaluating the medical opinion evidence; (D) finding Plaintiff's work in 2015 to be substantial gainful activity; and (E) finding that Plaintiff can perform "other work" at step five of the sequential process.

**A.  Plaintiff's Date Last Insured**

"In order to obtain disability benefits, [a claimant] must demonstrate that he was disabled prior to his last insured date." *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998). The Commissioner calculates a claimant's date last insured ("DLI") using his or her earned wages to determine the number of "quarters of coverage" a claimant has amassed. 20 C.F.R. § 404.130(b).

The ALJ consulted Plaintiff's initial "Development Summary Worksheet," submitted in July 2013, and found Plaintiff remained insured through March 31, 2016. AR 19, 346. Plaintiff argues that his date last insured is actually March 2018, as determined by his earnings records, which included quarters of coverage from work unavailable to the initial DLI formulated in 2013. AR 198.

The Commissioner argues that this error is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (discussing the harmless error rule in Social Security cases). Plaintiff asserts that the error is harmful because the ALJ rendered her decision on April 18, 2016, eighteen days after the ALJ's calculated DLI, and the principles of *res judicata* mandate using the March 31, 2016 DLI, rather than the March 2018 DLI, which would bar Plaintiff from asserting another DIB claim. Assuming, *arguendo*, that Plaintiff can advance an argument based on a speculative potential future harm, the Court disagrees that *res judicata* would bar using the March 2018 DLI in a future claim. Plaintiff's argument is barred by Administrative

Acquiescence Ruling 97-4(9), which was promulgated by the Agency to harmonize SSA

regulations with a Ninth Circuit case, *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).

Administrative Acquiescence Ruling 97-4(9) opens by describing SSA's general policy:

> Under SSA policy, if a determination or decision on a disability claim has become final, the Agency may apply administrative res judicata with respect to a subsequent disability claim under the same title of the Act if the same parties, facts and issues are involved in both the prior and subsequent claims. However, if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata. Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period. SSA does not adopt findings from the final determination or decision on the prior disability claim in determining whether the claimant is disabled with respect to the unadjudicated period. Further, under SSA policy, a prior final determination or decision that a claimant is not disabled does not give rise to any presumption of a continuing condition of non-disability. When a subsequent claim involves an unadjudicated period, the determination or decision as to whether a claimant is disabled with respect to that period is made on a neutral basis, without any inference or presumption that a claimant remains "not disabled."

Ruling 97-4(9), *available at* https://www.ssa.gov/OP_Home/rulings/ar/09/AR97-04-ar-09.html.

In contrast to this generally applicable SSA rule, following *Chavez v. Bowen*, the Ninth

Circuit applies a presumption of continuing non-disability to a subsequent disability claim,

which the claimant can rebut by showing changed circumstance affecting the issue of disability.

Because of this, the SSA issued Ruling 97-4(9), applicable only to states within the Ninth

Circuit, explaining that it "applies only to cases involving a subsequent disability claim with an

unadjudicated period arising under the same title of the Act as a prior claim on which there has

been a final decision by an ALJ or the Appeals Council that the claimant is not disabled." *Id.* IT

follows the Ninth Circuit's model, allowing a claimant to rebut the presumption of non-disability. If the claimant rebuts the presumption,

> adjudicators then must give effect to certain findings . . . contained in the final decision by an ALJ or the Appeals Council on the prior claim, when adjudicating the subsequent claim. For this purpose, this Ruling applies only to a finding of a claimant's residual functional capacity, education, or work experience, or other finding required at a step in the sequential evaluation process for determining disability under 20 CFR 404.1520.

*Id.*

Calculating a plaintiff's DLI, however, is not included in the sequential evaluation process under 20 C.F.R. § 404.1520. Therefore, under SSA regulations, the Agency will not consider the ALJ's calculated March 2016 DLI in potential future applications, but instead will treat the application *de novo* for determining a new DLI. Consequently, the ALJ's error is harmless as it does not affect the ultimate non-disability ruling in this case. *See Molina*, 674 F.3d at 1115.

**B. Plaintiff's Subjective Symptom Testimony**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms;

(2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7. Because the ALJ' decision was issued after March 16, 2016, it is governed by SSR 16-3p

The ALJ's review of a plaintiff's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

On September 5, 2013, Plaintiff completed an Adult Function Report stating that he suffered from daily pain in his legs and back, with no clear etiology, as well as adult ADD. AR 214. Plaintiff indicated that he helped care for his five children, but his girlfriend performed most of the cooking, cleaning, and childcare activities. AR 215. Regarding activities of personal care, Plaintiff stated that he had trouble dressing and bathing himself, and he required reminders to take medications. AR 216. Plaintiff alleged that his conditions affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, memorize, complete tasks, concentrate, understand, follow instructions, and get along with others. AR 219. Furthermore, Plaintiff stated that he could walk about 100 feet, did not handle stress well, and had been fired or laid off from a previous job because he did not get along with other people. AR 219.

On March 8, 2016, Plaintiff testified about his impairments at an administrative hearing. AR 40-88. Plaintiff testified that he could not drive more than two to three times per month because he experienced shooting pain down his back and legs. AR 43-44. Plaintiff indicated that while he worked for six months at the level of substantial gainful activity after his alleged disability onset date, his work was significantly accommodated. AR 48-49. Plaintiff also indicated that the additional work he completed for his brother was minimal, and the money his brother paid him was not commensurate with the work he performed. AR 49-50. Plaintiff testified that he cannot work because he is constantly in pain, and medication only reduces his pain levels to a five out of ten. AR 58. Regarding his daily activities, Plaintiff stated that he needed to lie down for about 70 percent of the day, and vocational rehabilitation and physical therapy failed to ameliorate his impairments. AR 60. Plaintiff stated that his medications, including Ritalin and pain medication, caused nausea and "slow[ed] his thought process down." AR 64.

The ALJ rejected Plaintiff's subjective symptom testimony. First, the ALJ noted that Plaintiff accepted unemployment benefits after his alleged disability onset date. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (noting that receiving unemployment benefits may cast doubt on a plaintiff's subjective testimony). Although Plaintiff received unemployment benefits from the State of Oregon for the entirety of 2013 and during the administrative hearing in 2016, there is no evidence in the record that Plaintiff held himself out as capable of maintaining full-time employment during that period. AR 190; *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (noting that to establish inconsistency with the plaintiff's allegations of disability, the record must establish that the plaintiff held himself out as available for full-time work when applying for unemployment benefits). The ALJ, however,

also noted that receiving unemployment benefits obligated Plaintiff to be *willing* to work, which could be established through attempts to find even a part-time job. Plaintiff testified to the contrary, stating that despite receiving unemployment benefits and acknowledging the requirement to search for work to continue to receive his benefits, he did not attempt to secure a job after 2014. This type of inconsistency, however, is not a factor to be considered under SSR 16-3p. It is the type of "credibility" assessment that has been disavowed when SSR 96-7p was replaced. Thus, it is not a clear and convincing reason to discount Plaintiff's subjective symptom testimony.

The ALJ also discredited Plaintiff's testimony because he was not always compliant with his prescribed treatment regimen. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (noting that an ALJ may discredit a plaintiff's subjective testimony due to an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"). After a surgery to correct his lumbar disc displacement in August 2014, Plaintiff ran out of his prescribed pain medication. AR 633. Instead of seeking additional medication from his physician, Plaintiff drank alcohol to manage his pain. AR 633. The ALJ's interpretation of the record that Plaintiff would have sought additional prescription medication rather than drinking alcohol if his pain was as severe as he asserts is rational. As such, the ALJ did not err in discrediting Plaintiff's testimony on this basis.

The ALJ further noted that the medical record conflicted with Plaintiff's subjective testimony. For instance, Plaintiff injured his back and groin in 2013 and underwent corrective surgery on August 22, 2014. After the surgery, Plaintiff continued to complain of back pain and a lack of functionality. The record shows, however, that he exhibited give-away weakness in January 2016, reported pain "with all movements but [did] not show any pain behaviors" in

March 2015, and reported back pain in October 2014, yet was able to sit comfortably, move around the room without pain, and could slump and lean without discomfort. AR 731, 736. Plaintiff argues that he displayed limited sensation and range of motion, as well as a positive straight leg raise, at the appointments where he displayed inconsistent pain behaviors. The ALJ did not dispute that Plaintiff was severely impaired due to his back injury, but instead disputed Plaintiff's testimony about the extent of the allegedly limiting effects caused by his injury. Plaintiff's demonstrated tendency to exaggerate his pain behaviors provides legally sufficient reasons to discredit his testimony regarding the limiting effects of his back injury.

Furthermore, x-rays taken in January 2016 confirmed that Plaintiff's lumbar spine remained unchanged from x-rays taken in September 2014, just after his surgery. While Plaintiff argues that x-rays are not the most effective method for imaging the spine, and an MRI would be more likely to display evidence of disc herniation, the fact remains that Plaintiff's doctors chose to use x-rays rather than MRIs to monitor his condition, and Plaintiff failed to produce MRI evidence to rebut the ALJ's conclusion. Thus, the ALJ demonstrated that the objective medical record conflicted with Plaintiff's allegedly debilitating back pain.

The ALJ also discredited Plaintiff's subjective testimony because his activities of daily living were inconsistent with the limitations to which he testified. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (noting that an ALJ may reject symptom testimony if a plaintiff's activities of daily living contradict such testimony). The ALJ cited Plaintiff's ability to attend college courses, skill at computer programming, plan to attend law school, history as a skills trainer for disabled adults, and ability to own and operate a computer repair business as daily activities that conflicted with his testimony. Each of these activities occurred before Plaintiff's alleged disability onset date, however, save for his college attendance, which was part-time and

accommodated. The ALJ further noted Plaintiff's ability to care for his five young children as a conflicting daily activity, yet the record shows that Plaintiff rarely took care of his children, and the Department of Human Services evaluative psychologist recommended against reuniting Plaintiff with his children. AR 390. These activities thus did not provide a basis for discounting Plaintiff's subjective symptom testimony. In contrast, the ALJ's reasoning was legally sufficient regarding Plaintiff's ability to work for six months at the level of substantial gainful activity after his alleged disability onset date, despite his complaints of disabling impairments. Although Plaintiff argues that his work was significantly accommodated, the ALJ's interpretation of the record is rational, as there is no evidence of workplace accommodation save for Plaintiff's own testimony. Therefore, the ALJ did not err in discrediting Plaintiff's subjective testimony.

## C. The Medical Opinions

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). An ALJ may reject a medical opinion based primarily on a claimant's subjective statements where the ALJ found those statements not credible. *See Morgan* 169 F.3d at 602; *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan* 169 F.3d at 595.

### 1. Dr. Annette Weller, M.D.

Dr. Weller treated Plaintiff in connection with a work injury of the right groin sustained on April 2, 2013. AR 348. Plaintiff's injury was initially diagnosed as a strain, but Dr. Weller believed Plaintiff's symptoms were more consistent with a lumbar disc herniation with radiculopathy. AR 348. On January 15, 2014, Dr. Weller stated that "[f]rom a vocational standpoint, the patient is not released to work at this time." AR 348. In March 2014, a few months later, Dr. Weller released Plaintiff to perform medium level work with no associated restrictions. AR 746.

The ALJ gave no weight to Dr. Weller's opinion that Plaintiff was unable to work in January 2014 because it was conclusory and unsupported by objective medical evidence.[2] AR 27. Dr. Weller did not explain any functional limitations that would be useful for the ALJ to consider when formulating the RFC. Moreover, Dr. Weller's opinion that Plaintiff was unable to work was contradicted by Plaintiff's statements and Dr. Weller's own observations. Plaintiff stated that his pain was exacerbated by walking, and was better while sitting or standing, and Dr. Weller noted that Plaintiff sat "comfortably and expressions of discomfort were associated with movement." AR 349-50. It is unclear why Plaintiff would not be able to maintain sedentary employment, per the ALJ's assessed RFC, if Plaintiff could sit comfortably. Plaintiff argues that a contemporaneous MRI shows evidence of disc herniation, but Dr. Weller did not associate the disc herniation with any functional limitations beyond those set forth in the RFC.

Dr. Weller also conducted a physical examination which revealed several instances of Plaintiff exaggerating his symptoms. For instance, Plaintiff's gait was "significantly antalgic"

---

[2] Additionally, the ALJ mistakenly found that Dr. Weller's opinion restricted Plaintiff from performing only heavy work, which is not stated anywhere in the record. While the ALJ erred, such error is harmless because the ALJ gave other reasons supported by substantial evidence to reject the doctor's opinion.

over the right lower extremity with a "quite dramatic" presentation while being evaluated, but when Plaintiff ambulated outside the exam room while being unknowingly observed, he exhibited a milder antalgia. AR 350. Furthermore, Plaintiff exhibited giveaway weakness of the bilateral hips and the right knee. AR 350. Plaintiff also leaned to the right while standing yet leaned to the left when seated, which the doctor found inconsistent with his complaint of right back and groin pain. AR 350. Thus, Dr. Weller's physical examination is of limited probative value, and the ALJ did not err in giving no weight to Dr. Weller's opinion that Plaintiff was unable to work.

### 2. Dr. Gregory Cole, Ph.D.

Dr. Cole completed a psychodiagnostic evaluation of Plaintiff on February 10, 2016, and diagnosed Plaintiff with a depressive disorder, anxiety disorder, somatic symptom disorder with predominant persistent pain, ADHD, PTSD, and a personality disorder. AR 363. Dr. Cole opined that Plaintiff had no restrictions in his ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. AR 365. Dr. Cole also diagnosed that Plaintiff was moderately restricted in his ability to carry out complex instructions, make judgments in complex work-related decisions, and carry out complex instructions. *Id.* Dr. Cole further stated that Plaintiff was moderately limited in his ability to interact with the public, supervisors, and co-workers, and was markedly limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting. AR 366.

The ALJ gave some weight to Dr. Cole's opinion, accepting the bulk of his findings, but rejecting the marked limitation in Plaintiff's ability to respond appropriately to usual work situations and to changes in a routine work setting. AR 28. The ALJ reasoned that because Dr. Cole assessed the marked limitation due to Plaintiff's chronic pain, insofar as Plaintiff's pain testimony was not fully credible, Dr. Cole's reliance on it undermined the doctor's assessment.

AR 28. Plaintiff, however, argues that Dr. Cole did not assess the marked limitation based solely upon Plaintiff's chronic pain allegations.

After a review of the relevant record, there is insufficient evidence to reverse the ALJ's finding. Dr. Cole opined that, "if [Plaintiff] pursues a vocational placement in the near future, then it is presumed that his problems managing pain, problems interacting with others, level of anxiety, pressured speech, and difficulties in the areas of attention and concentration, would be the primary factors" affecting his success. AR 363. Dr. Cole also noted that "further medical evaluation" was necessary to determine Plaintiff's physical limitations related to his pain, which undermines the doctor's conclusions about Plaintiff's pain and its effect on his health. AR 363. Furthermore, the doctor did not specifically outline objective evidence supporting his conclusion that Plaintiff would experience marked difficulty in workplace situations. The record also demonstrates that Dr. Cole focused a great deal on Plaintiff's physical pain and its effect on his life, noting that Plaintiff reported a constant six out of ten on the pain scale, pain interfering with his daily life and sleep, alleged difficulty sitting at the appointment due to pain, and pain increasing his irritation around people. AR 358-63. Taken as a whole, the ALJ's interpretation that Dr. Cole relied on Plaintiff's subjective pain testimony and behavior to formulate Dr. Cole's opinion is rational and must be upheld, even if equally rational interpretations of the record are possible. *See Batson*, 359 F.3d at 1196.

### 3. Dr. Eric Morrell, Ph.D.

On February 26, 2015, Dr. Morrell completed a comprehensive psychological evaluation to determine whether Plaintiff should be allowed to parent his children again. AR 376-91. Dr. Morrell noted that Plaintiff was manipulative and self-aggrandizing, consistently overstating his achievements and abilities. *Id.* Dr. Morell ceased questioning Plaintiff in several areas of concern because Plaintiff could not reliably relay accurate information, and opined that Plaintiff

exhibited grandiosity and minimizing behaviors, as well as mild anxiety. AR 382. Dr. Morell

diagnosed Plaintiff with alcohol related disorder, ADHD, perpetrator of adult physical abuse and

child neglect, and narcissistic personality disorder with dependent and antisocial features.

AR 388. Dr. Morell noted that Plaintiff's intellectual capacities were clearly intact. AR 389.

The ALJ gave partial weight to Dr. Morrell's opinion because the behavioral factors

analyzed were unrelated to work. AR 28. Plaintiff argues that Dr. Morrell's diagnoses of

antisocial personality features and narcissistic personality disorder affects his ability to interact

with co-workers in the workplace. The record, however, does not support Plaintiff's argument.

Plaintiff strongly disagreed with Dr. Morrell's diagnosis and sought a second opinion. Dr. Scott

Mendelson, M.D., opined that Plaintiff did "not strike [him] as meeting the criteria" for a

diagnosis of narcissistic personality disorder, because Plaintiff made several admissions during

the appointment that were at odds with such a diagnosis. AR 401. Plaintiff "rather compellingly"

argued against a diagnosis of narcissistic personality disorder, including that the appointment

with Dr. Morrell occurred during withdrawal from an opiate addiction and while Plaintiff worked

a late shift. AR 398. Thus, Plaintiff's own statements refute his argument that he would be

significantly affected by narcissistic personality disorder in the workplace.

### 4. Dr. James Daskalos, D.O.

Dr. Daskalos managed Plaintiff's treatment in connection with his worker's

compensation claim in 2013. AR 694. In May 2013, Dr. Daskalos issued a "modified job

description" of the work Plaintiff was capable of performing and opined that Plaintiff could lift

less than five pounds. AR 694. In October 2013, however, Dr. Daskalos issued a revised opinion

stating that Plaintiff can work with no restrictions. AR 674-76.

The ALJ gave no weight to Dr. Daskalos' May 2013 opinion, as it concerned a relatively

limited period and was made in connection with Plaintiff's complaints of back pain and limited

range of motion. AR 27. In contrast, the ALJ gave great weight to Dr. Daskalos' October 2013 opinion, as it supported the ALJ's finding that Plaintiff was capable of at least some work. AR 27.

Plaintiff argues that the ALJ erred in granting great weight to Dr. Daskalos' October 2013 opinion because a December 2013 MRI revealed a disc protrusion at the L4-L5 vertebral level. Additionally, Dr. Weller opined that Plaintiff's disc protrusion caused back pain and the radiating pain into his legs. AR 746. Thus, Plaintiff argues, there is contradictory contemporaneous medical evidence disputing Dr. Daskalos' conclusion that Plaintiff could work without restriction. Dr. Weller opined that Plaintiff was able to perform medium level work in March 2014, however, so any inconsistency in the medical evidence was limited. Furthermore, the ALJ only credited Dr. Daskalos' opinion to the extent that it showed *some* ability for Plaintiff to work. AR 746. Because the ALJ is responsible for resolving ambiguities in the medical evidence, he not err in his assessment of Dr. Daskalos' opinions. *See Tommasetti*, 533 F.3d at 1041-42.

## D. Substantial Gainful Activity

A claimant capable of working at the level of substantial gainful activity is not disabled under the meaning of the Act. *See* 20 C.F.R. § 404.1520(b). Substantial gainful activity is a work activity performed for pay or profit using "significant physical or mental activities." 20 C.F.R. § 404.1572. Generally, a claimant has performed work at the level of substantial gainful activity if their earnings are deemed "substantial," which can be determined by a formula in the Regulations. 20 C.F.R. § 404.1574. However, work activities that are accommodated by "special conditions" like "frequent rest periods" are not considered substantial gainful activity. 20 C.F.R. § 404.1573.

The ALJ found that Plaintiff engaged in substantial gainful activity from January 1, 2015 through June 30, 2015, working at a call center earning $1,100-$2,215 per month. AR 21. Plaintiff argues that his work was accommodated and, therefore, cannot be considered substantial gainful activity. At the administrative hearing, Plaintiff testified that his supervisor allowed him to take extra breaks every hour and he was seated near a bathroom. AR 47. The ALJ found that Plaintiff's "characterization" of his alleged accommodations was "not supported by the evidence of record." AR 21. Even assuming, *arguendo,* that the ALJ erred by considering Plaintiff's work substantial gainful activity, Plaintiff has failed to show that he was prejudiced by such an error. The ALJ proceeded from step one after setting aside the six-month period during which Plaintiff allegedly worked at the level of substantial gainful activity and went on to complete the sequential process. Because step one was resolved in Plaintiff's favor, he was not prejudiced by the ALJ's potential error. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Thus, the ALJ's error is harmless and cannot be the basis for remand.

**E.  Step Five**

At step five of the sequential process, the burden of proof shifts to the Commissioner to show that the claimant is capable of performing other kinds of work. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). Plaintiff's arguments at step five are based on the Court finding error in the ALJ's refutation of Plaintiff's subjective symptom testimony or the medical evidence. Because the Court found that the ALJ's opinion was free from harmful error, Plaintiff's arguments at step five are unfounded.

## CONCLUSION

The Commissioner's decision finding Plaintiff not disabled was supported by substantial evidence; thus, Plaintiff's request for remand (ECF 1) is DENIED. The Commissioner's decision denying Plaintiff's application for DIB is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 5th day of November, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge